**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Orion Food Systems, Inc.,

Plaintiff,

v.

Farmers Cooperative Oil Company of Echo, David Forkrud, Dooley's Petroleum, Inc., and Henry's Foods, Inc.,

Defendants.

Civil No. 00-1675 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

---

Steven W. Wilson, Briggs and Morgan, P.A., Minneapolis, Minnesota, for Plaintiff.

Bruce H. Little and Garrett M. Weber, Lindquist & Vennum, P.L.L.P., Minneapolis, Minnesota, for Defendants Farmers Cooperative Oil Company of Echo and David Forkrud.

Thomas G. Johnson and Todd M. Kleinhuizen, Schmidt, Thompson, Johnson & Moody, P.A., Willmar, Minnesota, for Defendant Dooley's Petroleum, Inc.

Warrenn C. Anderson, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Morris, Minnesota, for Defendant Henry's Foods, Inc.

---

## Introduction

Plaintiff Orion Food Services, Inc. ("Orion") manufactures and distributes two lines of food products relevant to this action: a line of pizza products marketed under the name "Hot Stuff Pizza," and a line of submarine-style sandwiches and related deli



FILED OCT 20 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

products marketed under the name "Smash Hit Subs." Orion commenced this action alleging that two of its former licensees – Farmers Cooperative Oil Company of Echo ("Farmers Co-op") and Dooley's Petroleum, Inc. ("Dooley's") – have been violating and continue to violate non-compete provisions in their respective license agreements by selling a competitive line of food products distributed by Defendant Henry's Foods, Inc. ("Henry's Foods").[1] Orion has also asserted the following statutory claims against the following defendants:

(1) misappropriation of trade secrets (against Farmers Co-op, Dooley's, and Henry's Foods);

(2) violations of 15 U.S.C. § 1114(1) (against Farmers Co-op and Dooley's); and

(3) unfair competition, false designation, false description, false representation, false advertising, fraud, and unfair and deceptive trade practices, in violation of 15 U.S.C. § 1125(a) (against Farmers Co-op and Dooley's).

On October 19, 2000, the Court held hearings on several motions brought by both sides to this litigation. All of the Defendants have moved to dismiss Orion's Complaint in its entirety on the grounds that it fails to state a claim upon which relief can be granted. All of the Defendants have also moved, in the alternative, for an order pursuant to Rule 12(e) directing Orion to make a more definite statement regarding the three statutory claims listed above. For its part, Orion has moved for a preliminary injunction

[1] Orion has also named Farmers Co-op's shareholder, David Forkrud, as a defendant in connection with the claims for breach of contract and misappropriation of trade secrets.

prohibiting Farmers Co-op and Dooley's from engaging in any quick service restaurant or foodservice business that offers food products of the same type as those Orion used to sell to the former licensees. Orion also seeks to enjoin Henry's Foods from aiding, abetting, counseling, commanding or inducing any franchisee or former franchisee to engage in conduct that violates the non-compete provisions of Orion's license agreements.[2] The final motion before the Court was brought by Defendants Farmers Co-op and Forkrud in response to several exhibits attached to the Affidavit of Steven Wilson that was submitted in support of Orion's preliminary injunction motion. Farmers Co-op and Forkrud have moved to strike those exhibits.

## Background

### I. The Nature of Orion's Business

Orion sells its food products both through company-owned outlets and through licensed and franchised outlets. Each outlet is in the form of a food service kiosk located inside a pre-existing business (such as a gas station or convenience store). Orion contends that it has developed a proprietary and distinctive method of operating its food service business which is identified by the trade name and service mark "Hot Stuff." (Weber Aff. Ex. A ("Hot Stuff" License Agreement with Farmers Co-Op Oil and David

---

[2] Orion also asks that the Court order Farmers Co-op and Dooley's (a) to return all written or tangible items relating to the operation of its pizza and submarine sandwich franchises, and (b) to remove all items on which the registered trademarks Hot Stuff Pizza and Smash Hit Subs are contained or on which the trade names "Hot Stuff" or "Smash Hit" appear.

Forkrud).)

## II. Henry's Foods and Its Relationship to Co-Defendants Farmers Co-op and Dooley's

Henry's Foods is a Minnesota corporation having its principal place of business in Alexandria, Minnesota. (Compl. ¶ 5; Answer of Henry's Foods ¶ 5.) Henry's Foods is a grocery and food service distributor which, inter alia, supplies retail businesses with food products. (Loeffler Aff. ¶ 1.) In 1999, Henry's Foods developed a "Deli-Max" program featuring pizza, submarine and other sandwiches, chicken and baked goods to be prepared by employees at the businesses whom Henry's Foods supplies and sold as retail food service items. (Id. ¶ 4.) As part of the "Deli-Max" program, Henry's Foods created branding, signage, training manuals, menus, printed containers, and advertising. (Id. ¶ 5.) At the time Farmers Co-op's and Dooley's license agreements with Orion expired, they were already customers of Henry's Foods. (Id. ¶ 8.)

## III. The Relationship Between Farmers Co-op and Orion

On April 6, 1995, Orion and David Forkrud and/or Farmers Co-op entered into a "Hot Stuff" License Agreement (the Farmers Co-op Agreement").[3] Pursuant to the

---

[3] The "Hot Stuff" License Agreement identifies the licensee as "Farmers Co-Op Oil, David Forkrud." (Schendel Aff. Ex. A.) The only party who signed the License Agreement, however, is David Forkrud in his individual capacity. (Id.) The License Agreement provides a separate signature block for a corporate licensee; however, that block is blank. (Id.) David Forkrud signed what Orion has described as a "personal guaranty." (Schendel Aff. Ex. B.) The guarantee states that it is to be signed by each and every stockholder or owner where the "licensee is a corporation or other entity." (Id.) In signing the document, Forkrud agreed to "primarily, unconditionally and irrevocably

Farmers Co-op Agreement, Farmers Co-op was licensed to use Orion's "Hot Stuff" trademarks to operate a retail food service kiosk and sell the "Hot Stuff" pizza product line at the Cenex Farmers Co-op Oil Co. in Wabasso, Minnesota.[4] (Weber Aff. Ex. A (Farmers Co-op Agreement).) The Farmers Co-op Agreement had a term of five years. (Id. ¶ 3.1.)

The Farmers Co-op Agreement also contained a provision purporting to limit Farmers Co-op's ability to engage in any quick service food service business for the sale of food products similar to the Hot Stuff Pizza line distributed by Orion. The provision at issue, section 8.3(c), reads as follows:

> [t]o prevent unfair competition based upon Licensee's knowledge of the System [defined earlier as "a proprietary and distinctive method of operating a distinctive foodservice business"], Licensee agrees, without licensor's written consent . . . (ii) for one year after the termination of expiration of this Agreement or any transfer (as defined in Section 10.1), not to own any interest in or otherwise work for, engage in or assist, directly or indirectly, any quick service restaurant or foodservice business that features, in whole or in part, an Italian-style menu or operation or (for SMASH HIT licensees) "submarine"-style sandwiches, located within three miles of any HOT STUFF Kiosk (and, for SMASH HIT licensees, and SMASH HIT Kiosk) in existence immediately before the termination or expiration or transfer. . . .

---

guarantee the full and timely performance by Licensee of each obligation undertaking [sic] by Licensee under the terms of the Agreement." (Id.)

[4] Wabasso is approximately 100 miles west-southwest of the Twin Cities, in Redwood County.

(Weber Aff. Ex. A. ¶ 8.3(c).)[5]

When the Farmers Co-op Agreement expired by its terms in April of 2000, Orion continued to supply Farmers Co-op with products and tried to negotiate a successor license agreement. The negotiations broke down in June of 2000. Farmers Co-op, which already purchased other retail food items through Henry's Foods, thereafter began to purchase and sell the "Deli Max" line of pizza and sandwich products that Henry's Foods distributed.

## IV. The Relationship Between Dooley's and Orion

Dooley's is the successor to Broman Oil Company's and Roger Broman's (collectively "Broman") rights and obligations under a "Hot Stuff" License Agreement with Orion. (Schendel Aff. Ex. D (Amendment to Orion Food Systems Franchise Agreement).) The agreement between Orion and Broman granted Broman a license to use Orion's marks and trade dress to establish and operate a retail food service kiosk for the "Hot Stuff Pizza" and "Smash Hit Subs" product lines at the Bird Island Handi Stop in Bird Island, Minnesota.[6] (Schendel Aff. Ex. C ¶ 1 ("Hot Stuff" License Agreement with

---

[5] Section 8.3(d) of the Hot Stuff License Agreement provides that "[i]t is the Licensee's burden to prove Licensee's compliance with this Section 8.3. For purposes of Section 8.3(b) and (c), the term 'Licensee' includes guarantors of Licensee's performance of this Agreement, Licensee's spouse and children, and if Licensee is a corporation or other entity, Licensee's officers, directors, employees, partners, and each shareholder or other owner of Licensee."

[6] Bird Island is approximately 90 miles west of the Twin Cities, in Renville County.

Broman).) The license agreement for the Bird Island Handi Stop (hereinafter, the "Bird Island License Agreement") had a term of five years.[7] (Id. ¶ 3.1.)

Like the Farmers Co-op License Agreement, the Bird Island License Agreement contained a provision purporting to limit the licensee's ability to engage in the quick service food service business for a period of one year after termination or expiration of the agreement. Section 7.3(c) of the Bird Island License Agreement states that

> Licensee shall not during or for one year after termination or expiration of this Agreement, own any interest in, lease property to or otherwise work for, engage in or assist, directly or indirectly, any other quick service restaurant or foodservice business that features, in whole or in part, an Italian-style menu or operation or (for SMASH HIT licensees) "submarine"-style sandwiches, located within one mile of the Authorized Location.

(Schendel Aff. Ex. C ¶ 7.3(c).)

After Dooley's assumed Broman's license agreement for the Bird Island Handi Stop, Orion and Dooley's agreed that the agreement's term would end on December 31, 1999.[8] (Schendel Aff. Ex. D ¶ 1.) On June 30, 2000, Dooley's closed its Orion kiosk and stopped offering Orion products for sale. Like Farmers Co-op, Dooley's had for years purchased other retail food items from Henry's Foods. On or about July 1, 2000,

---

[7] Broman had taken over an Orion franchise that had existed in Bird Island, Minnesota since 1988.

[8] Orion alleges that, by mutual agreement, Dooley's and Orion extended the term of the Bird Island License Agreement to June 30, 2000. (Compl. ¶ 17.) There is presently no written document in the record memorializing any such extension.

Dooley's began to operate a quick service food service business at the Handi Stop featuring "Deli Max" pizza and various sandwich products that were distributed by Henry's Foods.

## Analysis

### I. The Defendants' Motions to Dismiss

#### A. Procedural Posture

Defendants Forkrud and Farmers Co-op have not filed an Answer, instead bringing a Rule 12(b)(6) motion to dismiss and, in the alternative, a Rule 12(e) for a more definite statement. Defendants Dooley's and Henry's Foods, on the other hand, have each filed an Answer to Orion's Complaint and asserted therein the affirmative defense that Orion's Complaint fails to state a claim upon which relief can be granted. (Henry's Foods' Answer ¶ 19; Dooley's Answer at 4.) "A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed. R. Civ. P. 12(h)(2). Given that Henry's Foods and Dooley's have filed Answers, they technically should have challenged the sufficiency of Orion's Complaint under Rule 12(c) and sought a judgment on the pleadings. Because all three sets of Defendants have raised the issue of whether Orion's Complaint states claims upon which relief can be granted, the Court will deem Dooley's and Henry's Foods' motions as having been brought pursuant to Rule 12(c).

**B. Standard of Decision**

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take as true the allegations contained in the complaint. See Cooper v. Pate, 378 U.S. at 546, 84 S. Ct. at 1734. A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."

Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978)). Viewing the complaint in this manner, the court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957)).

A motion for a judgment on the pleadings should be granted "only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). Generally, in evaluating a motion for judgment on the pleadings (or a motion to dismiss brought pursuant to Rule 12(b)(6)), the court must ignore materials

outside the pleadings; a court may, however, "consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Id. (internal quotations and citations omitted). In ruling on the Defendants' Rule 12 motions, Orion has asked the Court to consider the affidavits and exhibits it submitted in support of its preliminary injunction motion. The Court concludes that the exhibits attached to the Affidavit of Tim Schendel are "materials necessarily embraced by the pleadings" in that they are copies of the documents referenced in the Complaint. The remaining materials, however, go beyond the scope of the Complaint to provide additional facts, including facts that post-date the Complaint.[9] To consider these materials would be to convert the Rule 12 motions into motions for summary judgment; that the Court will not do.

**A. Enforceability of the Non-Compete Clauses**

The Defendants contend that Counts I and II of the Complaint -- breach of contract and wrongful interference with contract -- must be dismissed because the non-compete clauses in the Farmers Co-op License Agreement and the Bird Island License Agreement (on which the claims are based) are unenforceable. These license agreements provide that they "shall be governed by South Dakota law (except that the South Dakota Franchise Act (SDCL T.37, Ch. 37-5A) shall apply only to South Dakota franchisees)." (Weber Aff.

---

[9] These materials include the Affidavits of Steve Watkins, Brian Hipple, Troy Battig, and Steven W. Wilson, and the text of the Affidavit of Tim Schendel.

Ex. A ¶ 14.2 (Farmers Co-op License Agreement); Schendel Aff. Ex. C ¶ 13.2 (Bird Island License Agreement).) The Defendants note that the chapter of the South Dakota Codified Laws regarding "Unlawful Contracts" contains this provision:

> Every contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53-9-9 to 53-9-11, inclusive.

S.D. Codified L. § 53-9-8. The Defendants assert that the non-compete clauses in the license agreements restrain the exercise of a lawful business and are therefore void under the foregoing provision of South Dakota law.

Orion responds with three arguments: (1) the non-compete clauses do not fall within the scope of § 53-9-8; (2) the non-compete provisions fall within the statutory exception to § 53-9-8 set forth in § 53-9-9, which permits certain non-compete agreements made in connection with the sale of the good will of a business; and (3) if the non-compete agreements are unenforceable under South Dakota law, then the contractual choice of law provision must be deemed "ineffectual," and the law of the state with the most "significant relationship" to the contract -- Minnesota -- must be applied. Orion contends that, under Minnesota law, the non-compete provisions are valid.

Before evaluating Orion's arguments, the Court begins with some threshold choice of law principles. A federal district court sitting in diversity jurisdiction determines which state's substantive law applies by reference to the choice-of-law rules of the state in which the district court is sitting. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487,

496, 61 S.Ct. 1020 (1941). Therefore, this Court applies Minnesota's choice-of-law rules. Minnesota courts traditionally enforce the parties' contractual choice of law provisions. Milliken & Co. v. Eagle Packaging, 295 N.W.2d 377, 380 n.1 (Minn. 1980); Combined Ins. Co. of Am. v. Bode, 247 Minn. 458, 464, 77 N.W.2d 533, 536 (1956); see also Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1392 (8th Cir. 1997); Medtronic, Inc., v. Gibbons, 684 F.2d 565, 568 (8th Cir. 1982). Here, the parties to the license agreements agreed that the agreements would be governed by South Dakota law (with the exception of the South Dakota Franchise Act). Accordingly, the Court considers whether the non-compete clauses are enforceable under South Dakota law.

### 1. Enforceability under South Dakota law

#### a. Applicability of § 53-9-8 to void the non-compete clauses

For the first time in the reply memorandum to its motion for a preliminary injunction Orion contends that the non-compete clauses in the license agreements are not within the scope of § 53-9-8, which prohibits contracts that restrain the exercise of a lawful profession, trade, or business.[10] This belated argument is based on an Eighth Circuit decision construing the North Dakota statute that voids contracts in restraint of trade and is worded nearly identically to S.D. Codified Laws § 53-9-8. Kovarik v.

---

[10] The reply memorandum on Orion's preliminary injunction motion was submitted after the briefing had been closed on the Defendants' motions to dismiss. Thus, Orion has had the benefit of a "sur-reply" memorandum regarding the validity of the non-compete provisions in the license agreements.

American Family Ins. Group, 108 F.3d 962 (8th Cir. 1997). Orion contends that Kovarik supports the proposition that, even in the face of a statutory provision such as § 53-9-8, restrictive covenants that have "as part of their intended purpose the protection of the plaintiff's trade secrets" are enforceable. (Pl.'s Reply Mem. Supp. Mot. for Prelim. Inj. at 7.) Orion argues that the non-compete clauses in the Farmers Co-op License Agreement and the Bird Island License Agreement are intended to protect Orion's trade secrets and, therefore, are not voided by § 53-9-8.

Kovarik involved an employment agreement between Kovarik, an insurance agent, and American Family Insurance Company. Kovarik had agreed that, upon termination of his employment, he would refrain for one year from "soliciting, either directly or indirectly, any American Family policyholders that were credited to the agent's account at the time of termination." Kovarik, 108 F.3d at 963. If Kovarik did not comply with this provision, he would forfeit his right to receive extended earnings on the policies he had previously written for American Family. Id. Shortly after terminating his employment with American Family, Kovarik began working for another insurance company and soliciting his former American Family clients to change insurance carriers. Id. American Family learned of Kovarik's conduct and informed him that payment of Kovarik's extended earnings would be suspended. Id. Kovarik brought suit to compel the extended earnings payments. Id.

Kovarik is both factually and legally distinguishable from the present case. First,

as the Eighth Circuit noted, Kovarik was not being prohibited from competing directly with his former employer, merely losing his right to receive extended earnings for policies he had prepared for American Family and was now trying to steal away. Kovarik, 108 F.3d at 965. In the present case, however, direct competition is being restrained; Orion seeks to prevent Farmers Co-op and Dooley's from selling product lines distributed by Henry's Foods that are directly competitive to the Hot Stuff Pizza and Smash Hit Subs product lines. Second, the Eighth Circuit focused on the fact that Kovarik had obtained substantial and specific information concerning individual customers of his former employer that he could subsequently use to target those same individuals. That information included

> names, addresses, and telephone numbers of policyholders; the amounts and types of insurance purchased; due dates of premiums and the amounts thereof; the character, description and location of insured property; and personal information as to the insured such as age, physical condition, the existence of dependents, licensed drivers in the household, driving records of licensed drivers, and financial and credit history.

Kovarik, 108 F.3d at 966. Thus, the Eighth Circuit was concerned in Kovarik with customer data that could fairly be called confidential. There are no allegations in Orion's Complaint that the defendant convenience stores have acquired specific information about the individual customers who purchase quick service food service products at their stores. Furthermore, unlike the North Dakota legislature, the South Dakota legislature has specifically addressed the concerns identified by the Eighth Circuit in Kovarik by creating

a statutory exception to § 53-9-8 to permit certain non-compete agreements made in connection with employment relationships. See S.D. Codified Laws § 53-9-11. In the present case, Orion is not the employer of either Farmers Co-op or Dooley's. (See Schendel Aff. Ex. A ¶ 14.5 (Farmers Co-op License Agreement provision stating that relationship is solely that of licensor and licensee); Schendel Aff. Ex. C ¶ 13.5 (Bird Island License Agreement stating same).)

For all of the foregoing reasons, the Kovarik opinion does not compel the conclusion that the non-compete clauses in the Farmers Co-op and Bird Island License Agreements lie outside the prohibition against restraints of trade found in S.D. Codified Laws § 53-9-8. The Court therefore considers whether, as Orion urges, one of the statutory exceptions to § 53-9-8 applies.

**b. Validity of the non-compete clauses under § 53-9-9**

Orion also argues that a statutory exception validating non-compete agreements made as part of the sale of the good will of a business applies to make the non-compete clauses enforceable. As it existed at the time the license agreements were signed, § 53-9-9 of the South Dakota Codified Laws read:

> One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or part thereof, so long as the buyer or person deriving title to the good will from him carries on a like business therein.

S.D. Codified Laws § 53-9-9 (Michie 1990). No South Dakota court has addressed

whether this provision applies to a non-compete agreement made in the context of franchise or licensing relationship. Nor has either the Eighth Circuit or a federal district court considered the question. Therefore, this Court must determine, to the best of its ability, how the South Dakota Supreme Court would resolve the issue. In making that prediction, the Court "may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data." Kovarik, 108 F.3d at 964 (internal quotations and punctuation omitted) (quoting Ventura v. Titan Sports, Inc., 65 F.3d 725, 729 (8th Cir. 1995)).

This Court believes that the South Dakota Supreme Court would structure its analysis around several principles of statutory construction. "The intent of a statute must be derived from the statute as a whole, from its language, and by giving the language its plain, ordinary and popular meaning." American Rim & Brake, Inc. v. Zoellner, 382 N.W.2d 421, 424 (S.D. 1986) (citing Moulton v. State, 363 N.W.2d 405 (S.D. 1985)). The South Dakota Supreme Court will not "enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning." Simpson v. Tobin, 367 N.W.2d 757, 763 (S.D. 1985). Furthermore, the South Dakota Supreme Court is mindful that the general prohibition in § 53-9-8 against restraints on competition "is a legislative determination of public policy." Communication Tech. Sys. v. Densmore, 583 N.W.2d 125, 129 (S.D. 1998). The South Dakota Supreme Court therefore construes exceptions to § 53-9-8 "narrowly so as to promote the prohibition against contracts in restraint of

trade." Central Monitoring Serv. v. Zakinski, 553 N.W.2d 513, 516 (S.D. 1996) (citing American Rim, 382 N.W.2d at 424).

Based on the foregoing principles, this Court is of the opinion that the South Dakota Supreme Court would hold that § 53-9-9 does not apply to the non-compete clauses contained in the Farmers Co-op and Bird Island License Agreements. The plain language of the exception permitting non-compete agreements in the context of a sale of "the good will of a business" requires just that – the sale of the good will of a business. The ordinary and popular meaning of the term "sell" is "to give up (property) to another for money or other valuable consideration: hand over or transfer title to (as goods or real estate) for a price -- opposed to *buy*." Webster's Third New Int'l Dictionary at 2061 (1986).[11] Orion relies upon the following description of what occurs to the franchisor's good will at the end of a franchise agreement:

> [o]ne can view a franchise agreement, in part, as a conveyance of the franchisor's good will to the franchisee for the length of the franchise. When the franchise terminates, the good will is, metaphysically, reconveyed to the franchisor.

See Jiffy Lube Int'l, Inc. v. Weiss Bros. Inc., 834 F. Supp. 683, 691 (D.N.J. 1993) (emphasis added).

---

[11] Similarly, the ordinary and popular meaning of the term "sale" is "a present transfer of such ownership of and title to all of or a part interest in personal property . . . under a contract by the seller to the buyer for a price paid or payable in money or other personal property -- distinguished from gift." Webster's Third New Int'l Dictionary at 2003 (1986).

Whatever happens to the good will of a franchise at the end of a licensing arrangement, one cannot describe it as a "sale" back to the licensor without turning the plain, ordinary, and popular meaning of the terms "sale" and "sell" on their head.[12] To hold that a "metaphysical reconveyance" is a "sale" would enlarge the statute beyond its face. Furthermore, the documents referenced in Orion's Complaint do not permit a finding that Orion transferred its "good will" to Farmers Co-op and Dooley's, such that the former licensee's were possessed of the good will of Orion's business when the license agreements expired. Paragraph 4.1 of the license agreements provides that Orion "is the exclusive owner of all good will now or hereafter associated with each of the Marks." (Schendel Aff. Ex. A ¶ 4.1; Schendel Aff. Ex. C ¶ 4.1.) The license agreements gave Farmers Co-op and Dooley's the right to use Orion's marks in connection with the sale of Orion's products. Nothing in the license agreements supports a finding that a buyer/ seller relationship existed in connection with the "good will" associated with Orion's business.

Based on the foregoing, the Court determines that the South Dakota Supreme

---

[12] The cases Orion cites suggest that, at best, a franchise arrangement involves a "loan," or "sharing" of the franchisor's good will with the franchisee. See Laguardia Assocs. v. Holiday Hospitality Inc., 92 F. Supp. 2d 119, 125 (E.D.N.Y. 2000) ("To a great degree, the franchisor-franchisee relationship is based on benefits flowing from the mutual sharing of consumer demand and good will for the franchised product or service.") (internal quotations and authority omitted); Jiffy Lube Int'l, Inc. v. Weiss Bros. Inc., 834 F. Supp. 683, 691 (D.N.J. 1993) (reasoning that "the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's good will.").

Court would hold that § 53-9-9 does not apply to validate the non-compete provisions in the Hot Stuff License Agreements. The Court therefore concludes that South Dakota law renders the non-compete provisions unenforceable. That conclusion does not, however, end the Court's inquiry.

### <u>2. Is the Choice of Law Provision "Ineffectual" such that Minnesota Law Applies?</u>

If South Dakota law would render the non-compete provision unenforceable, Orion contends that the license agreements' choice of law provision should be deemed "ineffectual," and the Court should apply Minnesota law to determine the validity of the non-compete clauses; this analysis should be made "pursuant to the principles set out in sections 187 and 188 of the Restatement (Second) of Conflicts of Laws." Specifically, Orion relies on a paragraph from comment e to § 187, which states:

> On occasion, the parties may choose a law that would declare the contract invalid. In such situations, the chosen law will not be applied by reason of the parties' choice. To do so would defeat the expectations of the parties which it is the purpose of the present rule to protect. The parties can be assumed to have intended that the provisions of the contract would be binding on them. If the parties have chosen a law that would invalidate the contract, it can be assumed that they did so by mistake.

Restatement (Second) of the Conflicts of Law § 187, cmt. e. Although Minnesota courts have cited with approval various provisions of the Restatement (Second) of Conflicts of Laws, no state or federal court applying Minnesota choice of law rules has utilized

comment e to § 187 to deem a contractual choice of law provision "ineffectual."[13] As previously stated, Minnesota courts traditionally enforce the parties' contractual choice of law provisions. Milliken & Co., 295 N.W.2d at 380 n.1; Combined Ins. Co. of Am., 247 Minn. at 464, 77 N.W.2d at 536. Orion asks this Court to depart from this well-established choice-of-law principle.

Orion argues that this case is virtually identical to a recent federal district court case from the Southern District of Iowa, Infomax Office Systems v. MBO Binder & Co., 976 F. Supp. 1247 (S.D. Iowa 1997). Infomax was an Iowa franchisee of MBO Binder pursuant to a franchise agreement that provided for termination either with or without cause. See 976 F. Supp. at 1248-49. The franchise agreement provided that it was to be "governed and construed in accordance with Illinois law." Id. at 1249. After MBO

---

[13] Orion cites to Nodak Mutual Insurance Co. v. American Family Mutual Insurance Co., 590 N.W.2d 670 (Minn. Ct. App. 1999), affirmed, 604 N.W.2d 91 (Minn. 2000), as support for the proposition that Minnesota courts apply the choice of law principles set forth in the Restatement (Second) of Conflicts of Law. It is true that the court of appeals in Nodak cited to § 188 of the Restatement (Second) of Conflicts of Law. That fact does not, however, compel the choice-of-law analysis Orion urges.

Nodak involved a subrogation dispute arising from an accident in North Dakota. 590 N.W.2d at 671. The issue presented to the Court of Appeals was whether Minnesota statutory law or North Dakota statutory law regarding subrogation actions applied to a no-fault insurer's subrogation claim. Id. at 672. The Minnesota Court of Appeals applied the five-part choice of law analysis attributed to Professor Leflar to determine which state's statutory law controlled the subrogation claim. Id. at 673-75. In connection with one of the Leflar factors, the Court of Appeals referred in passing to § 188 of the Restatement (Second) of Conflict of Laws. Id. at 674. Nodak did not involve a contractual choice of law provision, nor was the court of appeals called upon to determine what law governed the rights and duties of the parties with respect to an issue in contract.

terminated Infomax's dealership without cause, Infomax filed suit alleging, inter alia, that MBO violated the Illinois Franchise Disclosure Act by terminating the dealership without cause. Id. at 1253. The Illinois Franchise Disclosure Act prohibited a franchisor from terminating a franchisee prior to the expiration of the term of the franchise except for "good cause." Id.

The district court in Infomax recognized that the terms of the Illinois statute "directly contradict the clear and express 'without cause' termination provision." Id. at 1254. Reasoning that choice-of-law clauses are "used primarily as gap-fillers," the district court determined that there was "no 'gap' regarding whether the parties intended to allow termination without cause." Id. Citing to the comments following § 187 of the Restatement (Second) of Conflict of Laws, the Infomax court pronounced a "general rule . . . that choice-of-law clauses should not be given effect to the extent their operation would invalidate the contract overall or an express provision thereof." Id. The district court concluded that the choice-of-law provision was a "mistake" as to the invalidating portion of the chosen state's law and dismissed Infomax's claim for a violation of the Illinois statute. Id. at 1254-55.

Orion asserts that the reasoning in Infomax should be dispositive here because the non-compete provisions are clear and are not severable from the rest of the license agreements. Thus, if the non-compete provision falls, the entire contract falls. The Court disagrees both with Orion's reading of the severability clauses in the contracts here and

its view of the importance of Infomax. The severability clause in the Farmers Co-op License Agreement reads as follows:

> If any provision of this Agreement (except Section 8.3(c)(ii)) is held by a court or an arbitrator to be unenforceable, the provision shall be severed and shall not affect the balance of this Agreement, except that the provisions of this Agreement shall be equitably adjusted to compensate any party for any consideration lost as a consequence thereof. If Section 8.3(c)(ii) is or becomes illegal or unenforceable by virtue of legislation or a finding of an arbitrator or court, it shall be deemed conformed to such legislation or reformed to the least extent necessary to be lawful and enforceable in the opinion of the arbitrator or court.

(Schendel Aff. Ex. A ¶ 14.3.) The severability provision in the Bird Island License Agreement reads as follows:

> If any provision of this Agreement (except Section 7.3(c)(ii)) is adjudicated to be unenforceable, the provision shall be severed and shall not affect the balance of this Agreement. If Section 7.3(c)(ii) is or becomes illegal or unenforceable it shall be reformed to the least extent necessary to be lawful and enforceable in the opinion of the arbitrator or court.

(Schendel Aff. Ex. C ¶ 13.3.) These provisions evidence the parties' intent that, if the one-year post-contract non-compete clause is or becomes illegal or unenforceable, it would not automatically be severed from the rest of the agreement but rather, reformed to the extent necessary to become enforceable. Orion reads too much into the severability provision in asserting that, if the non-compete falls, the entire agreement falls. The severability provision merely purports on its face to give the post-contract one-year non-

compete clause a shot at being "blue penciled."[14]

Orion does not address another issue highlighted by the above-quoted severability provisions: the parties recognized that the non-compete clauses may be or may become illegal or unenforceable due to, among other things, legislation. Thus, the parties did not contemplate that the post-contract, one-year non-compete provision was iron-clad. Unlike the "clear and express" termination provision before the district court in Infomax, the contractual provisions relating to the post-contract one-year non-compete clauses leave a "gap" regarding the lawfulness of the post-contract non-compete provisions. Orion chose, in preparing the boilerplate language of its license agreements, to fill the gap with South Dakota law. It now seeks to be relieved of the consequences of that decision.

The Court concludes that application of the choice of law provision in the Farmers

---

[14] The severability paragraphs -- as they relate to the post-contract one-year non-compete provisions – are reasonably susceptible to more than one interpretation. The first, urged by Orion, would allow a court to modify the non-compete clause to make it lawful and enforceable, but would not encompass striking out the clause in its entirety if that is the "least extent" of change necessary to make the provision lawful. The second, urged by the Defendants, would permit a court to "blue pencil" through the entire non-compete provision if that is the minimum necessary to conform it to law.

Under Minnesota and South Dakota contract law, ambiguous contract language will be construed against the drafter. See Current Tech. Concepts, Inc. v. Irie Enterps. Inc., 530 N.W.2d 539, 543 (Minn. 1995); Cherne Indus. Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 89 (Minn. 1979) ("It is well-established that any ambiguity in a contract will be resolved against the draftsman."); City of Sioux Falls v. Henry Carlson Co., 258 N.W.2d 676, 679 (S.D.1977) ("[W]here an ambiguous contract exists, it should be interpreted most strongly against one who drafted the contract and caused the uncertainty to exist.") As acknowledged by counsel for Orion at the hearing, the pre-printed provisions in the license agreements were drafted by Orion. They will be construed against Orion.

Co-op and Bird Island License Agreements does not plainly defeat the expectations of the parties. The agreements reflect the parties' understanding that non-compete clauses could be illegal or unenforceable. That the non-compete clauses cannot in fact be salvaged under South Dakota law rests solely with Orion. The Court will not relieve Orion of the problem created by its own drafting and declare its choice of South Dakota law "ineffectual." Under South Dakota law, the non-compete provisions in the Farmers Co-op and Bird Island License Agreements are void. Accordingly, the Court will grant the Defendants' motion to dismiss Counts I and II of the Complaint.

**B. The Remaining Statutory Claims**

The basis of the Defendants' motion to dismiss the claims brought under the Uniform Trade Secrets Act and the Lanham Act is essentially that Orion has made conclusory allegations of violations of those statutes that are so lacking is substance they warrant dismissal.

Defendants have not shown that the allegations supporting the Trade Secrets Act and Lanham Act claims are legally deficient such that the Defendants are entitled to judgment as a matter of law. Orion alleges that Farmers Co-op and Dooley's received "specifications, know-how, formulae, food preparation information, methods, systems, and other trade secrets and confidential business information of Orion." (Compl. ¶¶ 11, 14.) Orion contends that, in violation of the Uniform Trade Secrets Act, Farmers, Forkrud, Dooley's, and Henry's Foods have wrongfully acquired and/or used know-how

and information "which is not generally known or readily ascertainable by others through proper means, is subject to reasonable secrecy measures, and would be of economic value if used by or disclosed to others in competition with Orion." (See id. ¶ 29.) Orion also complains that Farmers Co-op and Dooley's have used "specifications, formulae, know-how and information, and trade dress of Orion" that are allegedly protected under the Lanham Act. (Id. ¶ 38.) No facts or legal arguments presently before the Court suggest that Orion could not, ultimately, prove up facts consistent with these allegations. Accordingly, the Court will deny the Defendants' motions to dismiss Counts III through V of the Complaint.

## II. The Defendants' Motion for a More Definite Statement of Orion's Statutory Claims

Rule 12(e) of the Federal Rules of Civil Procedure provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). All three sets of defendants have sought an order requiring Orion to make a more definite statement of its claims under the Uniform Trade Secrets Act and the Lanham Act.

To the extent that Henry's Foods and Dooley's have requested a "more definite statement" of those claims, their request is belied by the fact that they have already answered the allegations of those claims. (Henry's Foods' Answer ¶ 16; Dooley's

Answer ¶¶ 19, 21.) Once a party interposes a responsive pleading, that party should be deemed to have waived the right to demand a more definite statement. Accordingly, the Court will deny Dooley's and Henry's Foods' motions for a more definite statement.

Defendants Forkrud and Farmers Co-op have not, however, answered Orion's Complaint. Accordingly, the Court will address their request for an order directing Orion to make a more definite statement of its statutory claims. Rule 8(a) of the Federal Rules of Civil Procedure provides in pertinent part that "[a] pleading which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Court is aware that, given the liberal standard of notice pleading and the availability of discovery, motions for a more definite statement are not viewed with favor. See Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F. Supp. 638, 644 (D. Minn. 1996) (Kyle, J.) (citing cases). The Court determines that the pleading before it is minimally adequate under the liberal standard of Rule 8(a) and will deny Defendants Farmers Co-op and Forkrud's the motion for a more definite statement.

## III. Orion's Motion for Preliminary Injunction

### A. Standard of Decision

A court must consider four factors in determining whether a preliminary injunction is appropriate: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm to the movant absent the injunction; (3) the balance between this harm

and the injury that the injunction's issuance would inflict on other interested parties; and (4) the public interest. See Pottgen v. Missouri High Sch. Activities Ass'n, 40 F.3d 926, 928 (8th Cir. 1994) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1991) (en banc). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction. However, a party moving for a preliminary injunction is required to show a threat of irreparable harm." Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994) (citations omitted). The party seeking the preliminary injunction has the burden of proof in establishing the appropriateness of such a remedy. See Davis v. Francis Howell Sch. Dist., 104 F.3d 204, 205-06 (8th Cir. 1997) (citing Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989) (en banc)). "The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when, as here, granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits." Calvin Klein Cosmetics Corp. v. Lenox Labs., 815 F.2d 500, 503 (8th Cir. 1987); see also Rathmann Group v. Tanenbaum, 889 F.2d 787, 790 (8th Cir. 1989).

In light of the Court's decision to dismiss with prejudice Orion's claims for breach of contract and wrongful interference with contract,[15] the Court will evaluate whether

---

[15] Counsel for Orion acknowledged during oral argument that dismissal of Counts I and II of the Complaint would necessitate denial of the requested injunctive relief based on the non-compete provision.

Orion is entitled to injunctive relief on its remaining claims for misappropriation of trade secrets and violations of the Lanham Act. For the following reasons, the Court will deny Orion's Motion for a Preliminary Injunction.

### B. Application of the Dataphase Factors

#### *1. Threat of Irreparable Harm*

The threat of irreparable harm is actually a threshold inquiry; if the party seeking the injunction fails to show such a threat, any preliminary injunction would be inappropriate, regardless of the other factors. See Baker Elec. Coop., 28 F.3d at 1472. If monetary damages would fully compensate a plaintiff for the harm it will suffer, then the harm cannot be considered irreparable. Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992). If, however, monetary damages "cannot be calculated with a reasonable degree of certainty or will not adequately compensate the plaintiff," the harm to the plaintiff is considered irreparable. AmeriGas Propane, Inc. v. Crook, 844 F. Supp 379, 390 (M.D. Tenn. 1993).

Orion argues that, as a franchisor, it will be irreparably harmed if its former franchisees are "allowed to unfairly take advantage of the benefits of the franchise system." Orion claims that it will be harmed by (1) an unfair competitive use of the confidential information, know-how, and business techniques Orion provided to Farmers Co-op's and Dooley's, and (2) a usurpation of Orion's business reputation and good will.

The record presently before the Court indicates that neither Farmers Co-op nor Dooley's has been using Orion's trademarks, trade dress or "confidential business information" since their licensing relationships with Orion ended. Dooley's and Farmers Co-op have submitted affidavits demonstrating that, when their licensing relationships with Orion ended, each business gathered up and removed from public view all signs, brochures, displays, and other materials within their stores bearing any of Orion's trademarks or trade names. (Dooley Aff. ¶ 6 (Bird Island Handi-Shop); Czuprynski Aff. ¶¶ 3-4 (regarding same); Forkrud Aff. ¶ 5 (Wabasso Farmers Co-op); Anderson Aff. ¶¶ 10 and 14 (regarding same).) Farmers Co-op also promptly removed all outdoor signage bearing Orion's trademarks or trade names. (Forkrud Aff. ¶ 5.) It appears that Dooley's was initially not effective in removing or obscuring the "Hot Stuff" marks displayed outside the Bird Island Handi-Stop. (Czuprynski Aff. ¶ 5.) However, the record before the Court indicates that Dooley's has taken additional measures to obscure the "Hot Stuff" mark on its outdoor awning; furthermore, Dooley's has ordered a replacement awning and removed the other outdoor signage at issue. (Czuprynski Aff. ¶¶ 5, 6.)

Nor is there evidence that Orion faces a threat of irreparable harm as a result of Dooley's or Farmers Co-op's continued possession of operations manuals or other printed materials provided by Orion. Farmers Co-op has introduced evidence that it destroyed many of the Orion manuals, marketing materials and other written matter after Farmers determined that it would not renew its license agreement with Orion. (Anderson Aff. ¶

15.) Farmers Co-op is willing to return to Orion those materials that have not been destroyed and are still in its possession. (Id. ¶¶ 14, 15.) For its part, Dooley's has demonstrated that, at Orion's behest, it gathered all of the materials in its possession relating to the Orion franchise; when a representative of Orion failed to come and collect those materials, Dooley's turned the materials over to its counsel. (Czuprynski Aff. ¶ 3.) Dooley's counsel, in turn, mailed those materials on or about September 5, 2000, to Orion's counsel.[16] (Kleinhuizen Aff. ¶ 3.)

It further appears that Henry's Foods has provided Dooley's and Farmers Co-op with its own manuals, instruction books, store signage and pricing information. (See Czuprynski Aff. ¶¶ 7-8; Loeffler Aff. ¶ 5-6.) Furthermore, Dooley's and Farmers Co-op have demonstrated that, in preparing the Deli Max food products and operating the deli portion of the Bird Island Handi-Stop, their employees use preparation books and manuals provided by Henry's, not materials prepared by Orion. (Czuprynski Aff. ¶¶ 7-8 (Bird Island Handi-Stop); Anderson Aff. ¶¶ 6, 9 (Wabasso Farmers Co-op).)

The record before the Court does not support a finding that Orion faces a threat of irreparable harm.[17] Orion's claim to harm ultimately rests on the complaint that it would

---

[16] At oral argument, Orion's counsel acknowledged that he had receive Orion materials from the defendants. Counsel for Farmers Co-op indicated that his client would return to Orion whatever materials were in his client's possession forthwith.

[17] Orion's argument that it will be irreparably harmed because Farmers Co-op and Dooley's will deflect the trade of former Hot Stuff/ Smash Hit customers to a competitor assumes two things. The first is that Orion is otherwise capable of selling its food

be "simply unfair" to permit Farmers Co-op and Dooley's to take the knowledge and experience they did not have prior to their association with Orion and use it to sell a competitive line of food products. Yet, there is evidence before the Court that not all of the knowledge Farmers Co-op and Dooley's would have obtained regarding the retail food service business would be proprietary or confidential to Orion. (See, e.g., Loeffler Aff. ¶ 9.) Based on the foregoing, the Court concludes that Orion has failed to meet its burden of establishing that it faces a threat of irreparable harm. Because Orion has failed to establish that threshold element, the Court need not reach the remaining Dataphase factors. Orion's motion for a preliminary injunction will be denied.

**Conclusion**

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. Based on the foregoing,

---

products in Wabasso and Bird Island. Orion has not alleged that there is another potential outlet in Wabasso or Bird Island through which it could sell the Hot Stuff Pizza and Smash Hit Subs product lines. Indeed, Orion acknowledges that there are no suitable alternative outlets in either Wabasso or Bird Island -- aside from Farmers Co-op and Dooley's -- for Orion's products. Orion's contracts with Defendants have expired, and Orion cannot force them to carry its product lines.

The second assumption is that customers will become confused that the "Deli Max" products they are now buying at Farmers Co-op and Dooley's are the food products manufactured and distributed by Orion. The only evidence supporting an inference of "customer confusion" relates to Dooley's sale of Deli Max products while Orion's "Hot Stuff" marks were discernable outside the store. Dooley's has since obscured or removed these marks. Orion's argument otherwise rests on an assertion that the Deli Max products are being sold in the same "physical space, display racks, style and manner" as was used for Orion's food product lines. That is insufficient to establish "customer confusion."

and all of the files, records and proceedings herein, **IT IS ORDERED THAT**

1. Defendants Farmers Cooperative Oil Company of Echo and David Forkrud's Motion to Dismiss or for a More Definite Statement (Doc. No. 6) is **GRANTED IN PART**. Count I of the Complaint against Defendants Farmers Co-op and Forkrud is **DISMISSED WITH PREJUDICE;**

2. Defendant Dooley's Oil Company's Motion to Dismiss or for a More Definite Statement (Doc. No. 8) is **GRANTED IN PART**. Count I of the Complaint against Defendant Dooley's is **DISMISSED WITH PREJUDICE;**

3. Defendant Henry's Foods, Inc.'s Motion to Dismiss or For a More Definite Statement (Doc. No. 11) is **GRANTED IN PART.** Count II of the Complaint against Henry's Foods is **DISMISSED WITH PREJUDICE;**

4. Defendants Farmers Cooperative Oil Company of Echo and David Forkrud's Motion to Strike Certain Exhibits (Doc. No. 37) is **DENIED;**

5. Plaintiff Orion Food Systems Inc.'s Motion to Exceed Page Limits is **GRANTED**; and

6. Plaintiff Orion Food Systems Inc.'s Motion for a Preliminary Injunction (Doc. No. 15) is **DENIED**.

Dated: October 20, 2000

RICHARD H. KYLE
United States District Judge